# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# DELTA DIVISION

VERSA BROWN                                                                                 PLAINTIFF

V.                                          CAUSE NO.: 2:09CV102-SA-SAA

NORTH PANOLA SCHOOL DISTRICT, ET AL.                       DEFENDANTS

## MEMORANDUM OPINION

Defendants North Panola School District ("NPSD"), Bob Strebeck, and Lucinda Carter have filed a Motion for Summary Judgment [49] on Plaintiff's claims against them. The Excellence Group, LLC, has also filed a Motion for Summary Judgment [54] on Plaintiff's Complaint. After reviewing the motions, responses, rules, and authorities, the Court finds as follows:

*Factual and Procedural Background*

The North Panola School District, a publicly funded school district, consists of three elementary schools, one junior high school, one high school and one vocational center. For many years, certain schools within the North Panola School District have been low performing on state-wide testing, in particular the Como Elementary School and North Panola High School.

Versa Brown, the Plaintiff, was hired as the Alternative Learning School (ALS) Director for NPSD in July 2006. Brown transferred from the Memphis City School District where she was a teacher with limited administrative duties. In January of 2007, Brown applied for the Superintendent position at NPSD. The NPSD School Board, however, hired Lucinda Carter, an assistant superintendent at NPSD, to fill the position. Plaintiff contends that Carter began a campaign of continual harassment toward Plaintiff because Brown applied for the Superintendent position.

Brown next applied for the Como Elementary School principalship for school year 2007-2008. Carter hired Greg Hodges to be principal of Como Elementary School. However, around

Labor Day of 2007, Carter approached Brown about taking over as principal at Como Elementary School. Carter testified that while Hodges was principal, "[d]iscipline was outrageous" at Como Elementary School. While acknowledging that Brown also had a problem with discipline at the Alternative Learning School, Carter noted that Brown said she had better skills to work with young children, as opposed to the grown students at ALS. Brown agreed to the transfer, and Greg Hodges was reassigned as the Director of the Alternative Learning School.

After joining Como Elementary as principal, Plaintiff became associated with the group Help Como's Children, or HCC, a local group of community persons interested in bettering the Como Elementary School. Started by a local Episcopalian priest years prior to the events at issue here, the group tutored students at Como Elementary once a week and met monthly at the Episcopalian Church in town. The group, although predominantly white, did have several African-American members, including: Versa Brown; NPSD maintenance worker Mr. Reed; Mr. Reed's wife; a car lot owner; and Mack Daniels, NPSD's public relations director. Plaintiff contends that Superintendent Carter took issue with Plaintiff's involvement with HCC, mainly because of its affiliation with a "white" church with "white" organization members.

In February of 2008, Carter called Plaintiff into her office and asked for her resignation. When Brown refused to resign, Carter gave Plaintiff a non-renewal letter. Brown contends Carter voiced the concern that they could not work together. Two hours later, Carter reneged on the non-renewal telling Plaintiff that she would return for the 2008-2009 school year.

During this period, NPSD was being observed by the State Department of Education for the District's underperformance on state-wide tests. NPSD hired The Excellence Group, an independent educational consulting organization, in October of 2007 to observe administrators and teachers in

all schools and make recommendations.

Dr. Hank Bounds, Superintendent of the Mississippi public schools at that time, held a town hall meeting in Batesville, Mississippi, on February 28, 2008. The meeting was initiated for the entire community to come together and discuss the problems plaguing the North Panola School District. Administrators and teachers at NPSD were not required to attend. Versa Brown attended and asked Dr. Bounds:

> Dr. Bounds, isn't it a fact that the learning environment is affect[ed] by sudden change? Additionally, would you not think if the school leader is always feeling uncomfortable that this matriculates to the students, faculty and staff? You see, I was fired at 2 [o'clock] and rehired [at] 4 [o'clock], the uncertainty could affect my performance, what do I do?

Dr. Bounds deflected the question and instructed Brown that the meeting was not called to discuss "personal" issues. Although Superintendent Carter, present at the town hall meeting, never approached Brown about her comments, Dr. Mina Bryan-Lightsey, a consultant with The Excellence Group stationed at NPSD, did tell Brown that she overstepped her bounds, according to Plaintiff. Plaintiff contends that as a result of her speech at the town hall meeting on February 29, 2008, she was later terminated.

In late April of 2008, the Governor declared a "state of emergency" at NPSD and authorized the State Department of Education to take over that school district pursuant to state law. Once a school district is taken over by the State, a conservator is appointed and given the absolute powers of school board and superintendent. Miss. Code § 37-17-6(14)(a) (imbuing the conservator with "administration, management and operation of the school district . . ."). This includes the power over employment issues, i.e., hiring and terminating. Id. at (14)(a)(I). Thus, once the Governor issued the "state of emergency," the conservator had sole authority over employment matters at NPSD.

3

Robert Strebeck, a veteran of the Mississippi public school system, was appointed Conservator of the NPSD to begin the first week of May, 2008. Prior to his assuming those duties, however, he visited the NPSD, and assured Plaintiff that he would not terminate her from her position as principal of Como Elementary School.

During Strebeck's first official week as Conservator, he visited all the schools of the NPSD. Strebeck testified that upon entering the Como Elementary School, he immediately noticed a lack of discipline in the school. He met Brown in her office and non-renewed her contract with the school district at that moment. The Conservator stated that the lack of discipline was a safety issue and indicative of a lack of instruction in the school. Strebeck then made an announcement over the public address system that Brown was no longer the principal, and that the students and teachers should get focused for the upcoming testing. Strebeck contends that he did not receive or review any information prior to non-renewing Brown. He did not speak with Carter or the Excellence Group, did not review Plaintiff's personnel file, and did not know of any statements Brown made at the town hall meeting prior to the non-renewal.

Versa Brown requested an audience with Robert Strebeck in late May of 2008 to discuss her non-renewal. Strebeck asked Dr. Mina Bryan-Lightsey to compile information regarding Brown's strengths and weaknesses as a school administrator. Dr. Bryan-Lightsey identified, among others, the following weaknesses and issues against Versa Brown:

- Her personal agenda against the superintendent hindered her greatly. She constantly and without reservation verbally attached Ms. Carter and the district on an ongoing basis to parents, community leaders, and guests in the building.
. . .
- Confrontational during community meeting with Dr. Bounds in attendance and the press in attendance.

4

> . . .
> • Exemplified lack of sound judgment in public meeting with MDE, State Superintendent, Dr. Hank Bounds.

Plaintiff filed this federal lawsuit against NPSD, Carter, Strebeck, and The Excellence Group, alleging: (1) retaliation for exercising her First Amendment rights under 42 U.S.C. Section 1983; (2) conspiracy to violate her First Amendment rights under 42 U.S.C. Section 1985(3); (3) race discrimination under 42 U.S.C. Section 1981; and (4) malicious interference with contractual relations. Defendants seek summary judgment as to all counts.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(c) when evidence reveals no genuine dispute regarding any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324, 106 S. Ct. 2548. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little, 37 F.3d at

5

1075. In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." Little, 37 F.3d at 1075.

*Analysis and Discussion*

(a) First Amendment retaliation under Section 1983

Plaintiff alleges that she was unlawfully terminated in retaliation for exercising her First Amendment rights. In particular, Plaintiff asserts Defendants violated her right to free speech, freedom of assembly, right to petition to government for redress of grievances, and right to be free from the establishment of religion.

*(i) Freedom of Speech*

Brown contends that the non-renewal of her employment contract was in retaliation for expressing her views to Dr. Hank Bounds at the town hall meeting in Batesville, Mississippi. Plaintiff submits that her view was protected speech, and that the non-renewal of her contract violated her rights under the First Amendment. To prevail on a First Amendment retaliation claim, a plaintiff must show:

> (1) they suffered an adverse employment decision, (2) their speech involved a matter of public concern, (3) their interest in commenting on matters of public concern outweighs [their] employer's interest in promoting efficiency, and (4) their speech motivated the adverse employment decision.

Blackwell v. Laque, 275 F. App'x 363, 368-69 (5th Cir. 2008) (citing Stotter v. Univ. of Tex. at San Antonio, 508 F.3d 812, 825 (5th Cir. 2007)). The Defendants argue that summary judgment is appropriate based on two of the above elements. Specifically, (1) that the speech was not a matter of public concern; and 2) that the Plaintiff has not shown that the speech at issue caused the adverse employment action. ((Because Plaintiff has not shown that the speech was the motivating factor in

her non-renewal, the Court will not address the first three prongs of the First Amendment retaliation test.))

It is well established that "public employees do not surrender all their free speech rights by reason of their employment." Jordan v. Ector County, 516 F.3d 290, 294-95 (5th Cir. 2008) (quoting Garcetti v. Ceballos, 547 U.S. 410, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006)); Williams v. Indep. Sch. Dist., 480 F.3d 689, 691 (5th Cir. 2007). Nevertheless, "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." Garcetti, 547 U.S. at 418, 126 S. Ct. 1951. For an employee's speech "to qualify for First Amendment protection, he must be speaking 'as a citizen on a matter of public concern.'" Nixon v. City of Houston, 511 F.3d 494, 497 (5th Cir. 2007) (quoting Garcetti, 547 U.S. at 418, 126 S. Ct. 1951).

"[B]efore asking whether the subject-matter of a particular speech is a topic of public concern, the court must decide whether the plaintiff was speaking 'as a citizen' or as part of [her] public job." Davis v. McKinney, 518 F.3d 304, 312 (5th Cir. 2008) (quoting Mills v. City of Evansville, 452 F.3d 646, 647-48 (7th Cir. 2006)). The Fifth Circuit has held that "[a]n employee is not speaking as a citizen – but rather in his role as an employee – when he 'make[s] statements pursuant to [his] official duties.'" Nixon, 511 F.3d at 497 (quoting Garcetti, 547 U.S. at 421, 126 S. Ct. 1951). "Activities undertaken in the course of performing one's job are activities pursuant to official duties and not entitled to First Amendment protection." Davis, 518 F.3d at 313. See e.g., Williams, 480 F.3d at 694 (holding that an athletic director's memo requesting information about the use of athletic funds was not protected speech because the information was needed to perform daily operations as an athletic director); Nixon, 511 F.3d at 498-99 (holding that a police officer's

7

statement to the media was made pursuant to his official duties because speaking to the media was arguably one of an officer's job responsibilities). Even if the speech at issue is not required by the employee's job, the speech may not be protected if it was made while performing the job or to fulfill the job's responsibilities. See Williams, 480 F.3d at 692.

As noted above, the town hall meeting was organized by the State Board of Education, not NPSD. NPSD administrators and teachers were not required to attend. At the time of the meeting, the School District had not been overtaken by the State. Thus, Versa Brown's attendance at the town hall meeting, and subsequent speech was not undertaken in the performance of her job.

Whether the speech at issue in a First Amendment case is a matter of public concern is a legal question. Kennedy v. Tangipahoa Parish Lib. Bd. of Control, 224 F.3d 359, 366 (5th Cir. 2000) (citing Rankin v. McPherson, 483 U.S. 378, 386 n.9, 107 S. Ct. 2891, 97 L. Ed. 2d 315 (1987)). While there are multiple tests to determine whether speech is of public concern, the Fifth Circuit generally employs the "content-form-context test" (also known as the "Connick test). See Connick v. Myers, 461 U.S. 138, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983). Under this test, "whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole court record." Kennedy, 224 F.3d at 366 (quoting Connick, 461 U.S. at 147-48, 103 S. Ct. 1684).

The Fifth Circuit also recognizes cases of "mixed speech." The court has stated, "The existence of an element of personal interest on the part of an employee in the speech does not prevent finding that the speech as a whole raises issues of public concern." Dodds v. Childers, 933 F.2d 271, 273 (5th Cir. 1991). In a mixed speech case, the court is "bound to consider the Connick factors of content, context, and form, and determine whether the speech is public or private based on these

factors." Teague v. City of Flower Mound, 179 F.3d 377, 382 (5th Cir. 1999). In Kennedy v. Tangipahoa Parish Library Bd. of Control, the Fifth Circuit examined the history of its mixed speech rulings and arrived at three principles about which a court should be mindful in a mixed speech case. The court stated:

> Having thus canvassed our mixed speech precedent, we discern three reliable principles. First, the content of the speech may relate to the public concern if it does not involve solely personal matters or strictly a discussion of management policies that is only interesting to the public by virtue of the manager's status as an arm of the government. If releasing the speech to the public would inform the populace of more than the fact of an employee's employment grievance, the content of the speech may be public in nature. Second, speech need not be made to the public, but it may relate to the public concern if it is made against the backdrop of public debate. And third, the speech cannot be made in furtherance of a personal employer-employee dispute if it is to relate to the public concern.

Kennedy, 224 F.3d at 372 (internal citations omitted).

The plaintiff in Kennedy was a former library supervisor whose employment was terminated after she wrote a letter to the library director and board of control about her concerns for the lack of security at the defendant's facilities. Id. at 362. The plaintiff's concerns arose when a fellow library employee was attacked and brutally raped while alone at work. Id. By the Kennedy defendant's own admission, "the crime sparked intense media scrutiny and gossip." Id. at 361. "Speech made against the backdrop of ongoing commentary and debate in the press involves the public concern." Id. at 373.

Here, the town hall meeting was called for the express purpose of discussing problems and concerns as the community saw them with NPSD. There was media at the meeting, and the record reflects that there was prior media coverage concerning the future of NPSD. Brown's comments, while somewhat personal in nature, did seek to highlight the problem of stability in the administration of NPSD. Conservator Strebeck admitted that stability is a major problem in NPSD

9

and negatively impacts student development. The Excellence Group consultant Stigler also commented, "All of this speculation [surrounding possible non-renewals] is taking a toll on the instructional focus." Thus, while facially Brown's comments appear to be a personnel dispute, she was addressing an issue of public concern - - how instability and uncertainty are affecting student performance.

Even if Plaintiff was speaking as a citizen on a matter of public concern, the Court nevertheless finds that the Plaintiff has failed to establish a causal connection between her allegedly protected conduct and her non-renewal. To prevail on her First Amendment free speech retaliation claim, Brown must show either that Strebeck, the sole decisionmaker, acted in retaliation, or that the improper motives of another actor can be imputed to him. See Beattie v. Madison County School Dist., 254 F.3d 595, 600 (5th Cir. 2001). Brown has not met her initial burden of demonstrating that her speech motivated her discharge.

Plaintiff's speech was made on February 28, 2008; Strebeck non-renewed her on May 7, 2008, a lapse of over two months. While this lapse of time is not a determinative factor as to whether Plaintiff was non-renewed because of that speech, it is probative. Jordan, 516 F.3d at 300-01 (length of time between the speech and the adverse action is only probative of causation, not determinative). Strebeck testified that Brown was non-renewed solely because when he visited Como Elementary, he personally witnessed the lack of discipline in the Como Elementary School.

Plaintiff has presented nothing more than conclusory allegations that The Excellence Group discussed Plaintiff's speech with Strebeck prior to the non-renewal. Dr. Mina Bryan-Lightsey testified that no one from The Excellence Group mentioned Plaintiff's speech in any meeting with Strebeck prior to Brown's non-renewal. Plaintiff claims that when Strebeck non-renewed her in

early May, he called her a "reactor," a phrase Dr. Mina Bryan-Lightsey has admitted The Excellence Group used in referring to Plaintiff. Strebeck admitted to calling Plaintiff a "reactor" but contends it was at the later follow-up meeting after the extensive discussion with Dr. Mina Bryan-Lightsey regarding the Plaintiff's performance. Regardless, the fact that Strebeck called Plaintiff a "reactor" is not proof that Strebeck based the non-renewal on Plaintiff's public speech at Dr. Bounds. Strebeck testified that he had no knowledge of Plaintiff's comments to Dr. Bounds prior to the non-renewal. No causal connection exists between Brown's allegedly protected speech and her non-renewal. See Moore v. Miss. Valley State Univ., 871 F.2d 545, 550 (5th Cir. 1989) (noting that employment decisions cannot be retaliatory where the decisionmaker was not shown to have been aware of the speech).

A plaintiff's own belief that the speech was a substantial or motivating factor is, by itself, insufficient to meet the standard required for the retaliation claim to survive a motion for summary judgment. Whiting v. Univ. of S. Miss., 451 F.3d 339, 351 (5th Cir. 2006). For the foregoing reasons, the Plaintiff's First Amendment free speech retaliation claim fails against Strebeck.

Likewise, Plaintiff has failed to present any evidence that The Excellence Group retaliated against Plaintiff based on her speech. As noted above, Strebeck had the sole authority over employment matters at NPSD. Plaintiff has put forth no evidence that The Excellence Group was involved in any adverse employment determination sufficient to hold them liable for First Amendment free speech retaliation. See Beattie, 254 F.3d at 605 (if the non-decisionmaking defendants did not cause the adverse employment action, they cannot be liable under Section 1983, no matter how unconstitutional their motives). The Memorandum produced by Dr. Mina Bryan-Lightsey was generated after Plaintiff's non-renewal; thus, any action taken prior to its creation could

not have been based on that document.

Further, it is undisputed in the record that Carter did not discuss Brown or Brown's speech with Strebeck ever. Thus, there is no genuine issue of material fact presented as to Plaintiff's First Amendment free speech retaliation claims against NPSD and Carter.

*(ii) Freedom of Assembly[1]*

Plaintiff asserts she was terminated for associating with the predominantly white HCC. There is no question as to Strebeck's authority to non-renew Plaintiff. As noted above, a conservator is imbued with all powers of superintendent and school board, including power over employment issues. Plaintiff admits that upon informing Strebeck that a Christian-based group was involved in Como Elementary School, Strebeck replied, "good, Como needs all the help it can get." Plaintiff also testified that no one from The Excellence Group told her they did not want HCC on campus or did not want Brown associating with HCC. Thus, Plaintiff has not presented a genuine issue of material fact that Strebeck or The Excellence Group violated her freedom of assembly or association rights.

Even assuming Plaintiff could hold Carter and NPSD liable, there is nothing more in the record besides vague, conclusory allegations and statements by the Plaintiff as to Carter's hostility toward HCC, an organization present in the Como Elementary School prior to Plaintiff's hiring.

Plaintiff has failed to show any correlative link between her participation and involvement in HCC and her non-renewal. Thus, her freedom of assembly and freedom of association retaliation claims fail against all Defendants.

---

[1] Although Plaintiff titles her claim as a freedom of assembly issue, it is argued as a freedom of association claim. Thus, the Court reviews both doctrines.

*(iii) Right to Petition the Government*

Assuming Plaintiff's claim of retaliation for violation of her First Amendment right to petition the government is based on her actions taken at the town hall meeting, her claim fails against all Defendants. As noted above, Plaintiff cannot show a causal connection between her "petition" and non-renewal. Thus, this claim is dismissed.

*(iv) Establishment of Religion*

There are no facts in evidence to support the claim that NPSD, Carter, or The Excellence Group established or supported one religion over another. Plaintiff may be claiming that Strebeck's comment at her non-renewal that "when God moves someone from one place, doors are opened in others and some things happen for the good," violates the Establishment Clause.

"If a government action is deemed to have been taken for the purpose of favoring, advancing, or endorsing religion, then no further analysis is required to conclude that an Establishment Clause violation has occurred." Doe by Doe v. Beaumont Indep. Sch. Dist., 240 F.3d 462, 492 (5th Cir. 2001) (citing Edwards v. Aguillard, 482 U.S. 578, 585, 107 S. Ct. 2573, 96 L. Ed. 2d 510 (1987)). The Court cannot conclude that Strebeck's stray remark to Plaintiff constituted the State endorsing his religious views. Thus, all Establishment Clause claims against Defendants are dismissed.

(b) Conspiracy under Section 1985(3)

Subsection three of Section 1985 prohibits conspiracies "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws," or to prevent another from voting or advocating in a federal election. 42 U.S.C. § 1985(3). Plaintiff contends that Defendants conspired to deter her from exercising her First Amendment rights based upon her affiliation with a "white" religious organization.

To succeed on their Title 42 U.S.C. § 1985(3) claim, the plaintiffs must prove the following: (1) a conspiracy between two or more people; (2) for the purpose of depriving a person or class of people of the equal protection of the laws or of equal privileges and immunities under the laws; and (3) an act committed in furtherance of the conspiracy that injures a person or deprives him of a right or privilege of a citizen of the United States. See Deubert v. Gulf Fed. Sav. Bank, 820 F.2d 754, 757 (5th Cir. 1987); Horaist v. Doctor's Hosp. of Opelousas, 255 F.3d 261, 270 (5th Cir. 2001); Earnest v. Lowentritt, 690 F.2d 1198, 1202 (5th Cir. 1982); Wong v. Stripling, 881 F.2d 200, 203-04 (5th Cir. 1989). Section 1985(3) requires, though, that there must be "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S. Ct. 1790, 1798, 29 L. Ed. 2d 338 (1983); Daigle v. Gulf State Util. Co., 794 F.2d 974, 978 (5th Cir. 1986); Horaist, 255 F.3d at 270. "It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' . . . its adverse effects upon an identifiable group." Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 271-72, 113 S. Ct. 753, 122 L. Ed. 2d 34 (1993). The Fifth Circuit has expressly declined to extend the reach of Section 1985(3) to include conspiracies motivated by religious, as opposed to racial, animus. Word of Faith World Outreach Ctr. Church v. Sawyer, 90 F. 3d 118, 124 (5th Cir. 1996).

Plaintiff contends that Carter and NPSD disapproved of her association with HCC because it was a "white" organization. Plaintiff claims that Carter and NPSD had a history of only wanting to hire African-American teachers. Moreover, Plaintiff asserts she was openly chastised for hiring two Caucasian males as teachers, and Carter on many occasions referred to those teachers as "white boys." Plaintiff also contends that Reggie Barnes, a consultant with The Excellence Group and

14

African-American male, kissed Dr. Bryan-Lightsey, a Caucasian female, in Plaintiff's office and said, "see, not all blacks are racist."

Viewing the facts in the light most favorable to Plaintiff, the evidence is insufficient to show a conspiracy based on invidious race discrimination. Plaintiff has failed to present facts showing an agreement between any parties to deprive her of her equal rights because of race. Plaintiff's allegations, even if true, do not prove that The Excellence Group and Carter and NPSD shared any common plan or act to deprive Plaintiff of her employment because of her race. Moreover, Plaintiff admits that Strebeck did not single her out because of her race. As established statutorily, Strebeck was the only person with the authority over employment decision at NPSD, as of May 2008. Thus, Plaintiff has failed to show that even if The Excellence Group and Carter and NPSD did engage in a conspiracy, there was no action taken in furtherance of the conspiracy to deprive her of those rights. This claim is therefore dismissed against all Defendants.

(c) Race Discrimination under Section 1981

In the Fifth Circuit, "[e]mployment discrimination claims brought under 42 U.S.C. § 1981 or § 1983 are analyzed under the evidentiary framework applicable to claims arising under Title VII of the Civil Rights Act of 1964, as amended at 42 U.S.C. section 2000e *et seq*." Lawrence v. Univ. of Texas Medical Branch at Galveston, 163 F.3d 309, 311 (5th Cir. 1999). A plaintiff must show intentional discrimination by presenting either direct or circumstantial evidence of discrimination. Alvarado v. Texas Rangers, 492 F.3d 605, 611 (5th Cir. 2007). This Court will apply, absent direct evidence of discrimination based on race, the basic framework that the Supreme Court articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Under that framework, the plaintiff must establish a prima facie case of discrimination. See

id. at 802, 93 S. Ct. 1817.

In order to establish a viable § 1981 claim pursuant to § 1983, Brown must establish a prima facie case of racial discrimination. LaPierre v. Benson Nissan, Inc., 86 F.3d 444, 448 n.2 (5th Cir. 1996)("Claims of racial discrimination brought under § 1981 are governed by the same evidentiary framework applicable to claims of employment discrimination brought under Title VII."); Wallace v. Texas Tech Univ., 80 F.3d 1042, 1047 (5th Cir.1996)("to succeed on a claim of intentional discrimination under Title VII … or Section 1981, a plaintiff must first prove a prima facie case of discrimination."). To meet the prima facie burden, a plaintiff must prove: (1) he is a member of a protected group or class; (2) he was qualified for his position; and (3) he was subjected to an adverse employment action (4) because of his race. Shackelford v. Deloitte & Touche, L.L.P., 190 F.3d 398, 404 (5th Cir. 1999); Fields v. J.C. Penney Co., 968 F.2d 533, 536 n.2 (5th Cir. 1992).

It is undisputed that Plaintiff is a member of a protected class, and that she was subjected to an adverse employment action. Defendants contend that Plaintiff was not qualified for the position of principal of Como Elementary School because of her lack of prior administrative experience. Further, the Defendants assert Plaintiff failed to present evidence that she was non-renewed because of her race. Because the fourth McDonnell Douglas factor is dispositive of Plaintiff's Section 1981 claim, the Court will not address whether Plaintiff was qualified for the position at Como Elementary School.

Plaintiff has failed to establish a prima face case of race discrimination under Section 1981. Plaintiff admitted in her deposition that Conservator Strebeck did not single out Plaintiff because of her race. Indeed, Plaintiff's racial allegations center around Lucinda Carter, who, at the time of Plaintiff's non-renewal, had no authority over the employment decisions of NPSD. Plaintiff's

16

conclusory allegations and speculation as to racial discrimination are insufficient to survive a motion for summary judgment. Swanson v. Gen. Serv. Admin., 110 F.3d 1180, 1186 (5th Cir. 1997)(noting that bare allegations of racial discrimination are too speculative to create a jury question). Thus, there is no genuine issue of material fact as to Plaintiff's Section 1981 claim as there has been no evidence presented that Plaintiff was non-renewed based on her race.

Assuming that Brown could establish a prima facie case, the burden shifts to the defendants to articulate some legitimate, non-discriminatory reason for the challenged employment action. Pratt v. City of Houston, Texas, 247 F.3d 601, 606 (5th Cir. 2001)(citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)). If such a showing is made, the burden shifts back to the plaintiff to demonstrate that the articulated reason was merely a pretext for discrimination. Id. "At that point, 'the McDonnell Douglas framework - with its presumptions and burdens - disappear[s] and the sole remaining issue [is] discrimination *vel non*.'" Auguster v. Vermilion Parish School Board, 249 F.3d 400, 402 (5th Cir. 2001) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)). The ultimate burden of persuading the trier of fact that the defendant discriminated against the plaintiff remains with the plaintiff. Id. In Reeves, the Supreme Court held that evidence of the falsity of the defendant's explanation "may" allow the fact-finder to infer intentional discrimination. Reeves, 530 U.S. at 143, 120 S. Ct. 2097. In making this determination, a court should consider "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case … ." Id. However, such a showing will not defeat summary judgment "if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence

17

that no discrimination occurred." Pratt, 247 F.3d at 606 (quoting Reeves, 530 U.S. at 143, 120 S. Ct. 2097). In the absence of any evidence of discriminatory motive, it is not for a court to decide whether a good-faith business decision was a correct decision or not. Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1091 (5th Cir. 1995).

Strebeck testified that he was hired as a conservator to come into the North Panola School District and make quick changes to facilitate higher test scores and a better learning environment. As part of this plan, he visited each school during his first official week as conservator. Strebeck testified that upon entering Como Elementary School, he noticed a lack of discipline in the hallways. This, Strebeck asserts, was a safety issue, so Strebeck immediately non-renewed the Plaintiff. Defendants have established a sufficient legitimate, non-discriminatory reason for Plaintiff's non-renewal.

In response, Plaintiff has not articulated any racial pretext for Strebeck's decision to non-renew. In fact, Plaintiff admits that there were discipline problems at Como Elementary School. Plaintiff's racial discrimination claim under Section 1981 is dismissed.

(d) Malicious Interference with Contractual Relations

Plaintiff asserts that Defendants The Excellence Group and Superintendent Carter maliciously interfered with her employment contract. Carter argues that Plaintiff's state law claim is barred by the Mississippi Tort Claims Act as no notice of claim was sent to the school district. However, the protections of the Mississippi Tort Claims Act are inapplicable because the Plaintiff asserts "malicious" conduct which is specifically excluded from the immunity provision by section 11-46-7(2). See J.A.M. Promotions, Inc. v. Tunica County Arena & Exposition Ctr., Inc., 2010 U.S. Dist. LEXIS 35551 (N.D. Miss. Apr. 7, 2010).

A claimant seeking recovery for malicious interference with contract must establish the following elements: (1) intentional and willful acts; (2) calculated to cause damage to the plaintiff's lawful business; (3) done for an unlawful purpose of causing damage, without right or justifiable cause; and (4) causing such a loss. <u>Levens v. Campbell</u>, 733 So. 2d 753, 760-61 (Miss. 1999). Plaintiff asserts that but for the interference of the Defendants, she would still have a job. Plaintiff claims as evidence of the malicious interference the fact that Strebeck affirmed her employment on April 27, then one week later, non-renewed her. Plaintiff asserts that during this week, The Excellence Group and Carter convinced Strebeck to non-renew her contract.

Strebeck testified that he did not consult Carter or The Excellence Group prior to Brown's non-renewal. He stated that he had never had a conversation about Versa Brown with Carter. Carter testified that she did not talk to Strebeck regarding Brown. Accordingly, Plaintiff provides no evidence that Carter or NPSD maliciously interfered with the non-renewal of Plaintiff's contract by Strebeck.

Strebeck acknowledged that he did have one consultation with The Excellence Group prior to Brown's non-renewal; however, he testified that the discussion was about Como Elementary School and not particularly Versa Brown. Even if The Excellence Group convinced Strebeck to non-renew Plaintiff, there is no evidence of malice in their action.

*Conclusion*

For the foregoing reasons, Plaintiff's claims against the Defendants are dismissed, and this case is CLOSED.

An order in accordance with this opinion shall be entered this day.

SO ORDERED, this the 28th day of July, 2010.

                                                  **/s/ Sharion Aycock**
                                                  **U.S. DISTRICT JUDGE**